**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| **K.A.T., A Minor Child, By and Through** | * | |
| **His Grandmother and Mother, MARY E.** | * | |
| **BAKER,** | * | |
|     **Plaintiffs,** | * | |
| | * | |
|     **-VS-** | * | |
| | * | |
| **GLYNN COUNTY SCHOOL** | * | |
| **DISTRICT; SCOTT SPENCE, in his** | * | |
| **Individual and Official Capacity;** | * | |
| **CARTER AKINS, in his Individual and** | * | |
| **Official Capacity; TODD COLLIER,** | * | |
| **in his Individual and Official Capacity;** | * | |
| **SENETRA HAYWOOD, in her** | * | |
| **Individual and Official Capacity; PAUL** | * | **CIVIL ACTION NO.:  CV225-**___073___ |
| **MCKENZIE, in his Individual and** | * | |
| **Official Capacity; CURTIS CREWS; in** | * | |
| **his Individual and Official Capacity;** | * | |
| **MAGGIE GRANGE, in her Individual** | * | |
| **and Official Capacity; BETHANY** | * | |
| **CRUTCHFIELD,  in her Individual and** | * | |
| **Official Capacity; JOSEPH LANHAM,** | * | |
| **in his Individual and Official Capacity;** | * | |
| **STEPHEN BROOKS in his Individual** | * | |
| **and Official Capacity; AND TRACY** | * | |
| **REYNA in her Individual and Official** | * | |
| **Capacity;** | * | |
| | * | |
|     **Defendants.** | * | |

## COMPLAINT FOR DAMAGES

    **K.A.T.** and his grandmother and adoptive mother, **MARY E. BAKER**, file this Complaint

for Damages to address the pervasive racial discrimination and hostile educational environment

**K.A.T.** and other Black students, especially Black male students, face within the Glynn County

School System. **K.A.T.** and **MS. BAKER** seek damages and injunctive relief for **K.A.T.'S** racially

motivated expulsion, suspension, two adverse tribunal results, and the continuous racial attacks **K.A.T.'S** faced at Glynn Middle School (GMS). This racially vicious environment led **K.A.T.** and **MS. BAKER** to bring this Complaint against **DEFENDANTS** for violations of **K.A.T.** and **MS. BAKER'S** rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 and Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq.*, and 42 U.S.C. § 1985.

## I.  INTRODUCTION

### -1-

**K.A.T.** and **MS. BAKER** seek relief for longstanding racial discrimination faced by **K.A.T.** and other Black students at Glynn Middle School (GMS), Glynn Academy High School (GA),  and other  **GLYNN COUNTY SCHOOL DISTRICT** ("**GCSD**") schools.

### -2-

**GCSD** officials have known of this issue and have willfully failed to address or prevent it.

### -3-

**DEFENDANTS** have encouraged these discriminatory practices.

### -4-

The discriminatory and unconstitutional conditions present at GMS, Glynn Academy High School (GA), and other **GCSD** schools grow out of a pattern and practice of discrimination endorsed by policies and practices adopted and allowed by **DEFENDANTS**.

### -5-

The administrators at GMS and GA along with the remaining **DEFENDANTS** all contributed to the racially hostile environment in the **GCSD** schools.

-6-

**DEFENDANTS**  willfully ignored the racial animosity suffered by Black students and perpetrated by White students and staff while dismissing the long history of racial attacks against Black students.

-7-

This continuing racially inhospitable atmosphere forced **K.A.T.** from GMS and foreclosed his attendance at other Glynn County Schools, knowing that he would remain a target of further racial aggression if he returned to the  Glynn County Schools.

-8-

**DEFENDANT GCSD** officials have embraced White students calling **K.A.T.** a "bitch, ass, nigger" and calling other Black students "monkey."

-9-

**DEFENDANT GCSD** refused to protect **K.A.T.** and other Black students from such heinous attacks.

-10-

**DEFENDANT GCSD** allowed open season on Black students by White students.

-11-

**DEFENDANT GCSD** did nothing when provided with evidence of these despicable, racial, verbal assaults against  **K.A.T.** and other Black students.

-12-

GMS further traumatized **K.A.T.** by prosecuting  **K.A.T.**  in juvenile court although **K.A.T.** defended himself from an imminent, racially violent attack by F.G., a White GMS student.

**-13-**

**DEFENDANT GCSD** took no action against F.G. who called **K.A.T.** a "bitch, ass, nigger."

**-14-**

**DEFENDANT GCSD'S** video cameras captured F.G.'S imminent assault upon **K.A.T.**

**-15-**

Attacks such as this one remained typical of the hostile learning environment experienced by **K.A.T.** and other Black students at GMS, GA, and other Glynn County schools.

**-16-**

GMS also failed to address other acts of bullying that targeted  **K.A.T.**

**-17-**

GMS bought into the fallacy of the mythical inherent dangerousness of Black boys and men and the lack of innocence of Black boys.

**-18-**

GMS' acceptance of this stereotype justified it in its eyes GMS' disregard of the harassment and unwarranted punishment suffered by **K.A.T.**

**-19-**

**K.A.T.** and **MS. BAKER'S** lawsuit seeks to remedy these deep-seated and unconstitutional policies and practices within **DEFENDANT GCSD'S** school system in order to provide **K.A.T.** and all other Black students similarly situated the equal protection they are promised under the Constitution and laws of the United States.

## II. PARTIES

### -20-

At all times relevant to this Complaint **K.A.T.**, then a six-foot tall, eleven-year-old Black male, attended the sixth grade at GMS.

### -21-

At all times relevant to this Complaint, **MS. BAKER**, a Black female, was **K.A.T.'S** biological grandmother and adoptive mother.

### -22-

At all times relevant to this Complaint, **DEFENDANT GCSD** operated the Glynn County public school system that had the duty to "establish and maintain public schools" in Glynn County under the Georgia Constitution. Ga. Const. Art. VIII, § 5, ¶ I.

### -23-

At all times relevant to this Complaint, the Glynn County Board of Education (Board) governed **DEFENDANT GCSD** and had the constitutional obligation of "management and control" of GCSD. Ga. Const. Art. VIII § V, ¶, I.

### -24-

At all times relevant to this Complaint, **DEFENDANT GCSD** received federal funds. https://nces.ed.gov/ccd/districtsearch/district_detail.asp?ID2=1302400.

### -25-

At all times relevant to this Complaint, all **DEFENDANTS** qualified as state actors subject to the Fourteenth Amendment of the U.S. Constitution.

.

-26-

At all times relevant to this Complaint, **DEFENDANT SCOTT SPENCE**, a White male, served as the Superintendent of **DEFENDANT GCSD**.

-27-

The Glynn County Board of Education appointed **DEFENDANT SPENCE** to this position.

-28-

At all times relevant to this Complaint, **DEFENDANT CARTER AKINS**, a White male, served as the Principal of GMS.

-29-

At all times relevant to this Complaint, **DEFENDANT TODD COLLIER** a White male, served as an Assistant Principal of GMS.

-30-

At all times relevant to this Complaint, **DEFENDANT SENETRA HAYWOOD**, a Black female, served as the Executive Director, Student Services & Compliance, Glynn County Schools.

-31-

At all times relevant to this Complaint, **DEFENDANT PAUL MCKENZIE**, a Black male, served as the hearing officer at the May 15, 2023 and the January 19, 2024 tribunals against **K.A.T.**

-32-

At all times relevant to this Complaint, **DEFENDANTS CURTIS CREWS**, a Black male, **MAGGIE GRANGE**, a Black female, and **BETHANY CRUTCHFIELD**, a Black female, served as tribunal members at the May 15, 2023 tribunal against **K.A.T.**

-33-

At all times relevant to this Complaint, **DEFENDANTS JOSEPH LANHAM**, a Black male, Assistant Principal at Brunswick High School, **STEPHEN BROOKS**, a White male, principal of Sterling Elementary School,  and **TRACY REYNA**, a White female, principal of Golden Isles Elementary School, served as tribunal members at the January 19, 2024 tribunal against **K.A.T.**

-34-

All **DEFENDANTS** exercised power by virtue of state law, were clothed in the authority of state law, or acted under color of law.

### III.  JURISDICTION

-35-

This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this case arises as a civil rights action under the laws of the United States, namely Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.,* and 42 U.S.C. §§ 1983 and 1985.

### IV.  VENUE

-36-

Venue lies in the Southern District of Georgia pursuant to 28 U.S.C. § 1391 (b )(2), as the **DEFENDANTS** reside in Glynn County, Georgia located within the Brunswick Division of the Southern District of Georgia.

-37-

The incidents and injuries suffered by **K.A.T.** and **MS. BAKER** occurred within the Brunswick Division of the Southern District of Georgia.

-38-

At all times  relevant to this Complaint, **MS. BAKER** and **K.A.T.** resided in Brunswick, Glynn County, Georgia in the Brunswick Division  of the United States District Court for the Southern District of Georgia.  28 U.S.C. § 90(c)(5).

## V.  FACTUAL BACKGROUND

### a)      History of Racial Discrimination Within the Glynn County Schools

-39-

Glynn County created a segregated system of public education in 1873. https://www.glynn.k12.ga.us/apps/pages/index.jsp?uREC_ID=1725741&type=d&pREC_ID=1894767#:~:text=The%20year%201873%20saw%20the,schools%20serving%20the%20entire%20county.

-40-

In that year, the General Assembly of Georgia created a system of public schools that mandated the instruction of Black and White students in separate schools. *Id*.

-41-

The act of 1873 did not provide for adequate funding of the separate school systems.

-42-

Brunswick opened its first Black public school in 1870 as the Freedmen's School, later changed to Risley School to honor Union Army Lieutenant Douglas Gilbert Risley, who raised funds for the school's construction. https://risley.glynn.k12.ga.us/apps/pages/index.jsp?uREC_ID=1740027&type=d&pREC_ID=1918447.

**-43-**

Lieutenant Risley arrived in Brunswick in 1867 as head of the "Bureau of Refugees, Freedman and Abandoned Lands." *Id.*

**-44-**

The first of the new buildings was erected around 1922 and by 1923, a two-story brick building was erected with 12 classrooms, a large auditorium, and seven additional rooms. *Id.*

**-45-**

Eventually, grades 11 and 12 met in this building, providing the first Black high school in Brunswick. *Id.*

**-46-**

The Colored Memorial School, named in honor of Black service personnel who served during World War I, a brick building, erected next to the Risley School, still stands today. *Id.*

**-47-**

This site also contains a recently erected monument to eleven known and numerous unknown martyrs of racial terror lynchings in Glynn County, Georgia.

**-48-**

The monument contains Ahmaud Arbery's name as the last entry.

**-49-**

In 1936 Risley High School was built on the site of the 1870 Freedmen's School and remained in service until 1955 when a new Risley High School was constructed. *Id.*

-50-

Brunswick schools also partially integrated through a voluntary plan proposed in 1963.

https://www.georgiahistory.com/georgia-historical-society-dedicates-new-civil-rights-trail-histori

cal-marker-recognizing-the-civil-rights-movement-in-brunswick/#:~:text=Brunswick%20schools

%20also%20partially%20integrated,dual%20school%20system%20in%201970.

-51-

Brunswick and Glynn County schools did not fully integrate until a court-ordered mandate

ended the resistance to integration and the dual school system in 1970. *Id*.

**b)    Demographics of Glynn County, Brunswick, Saint Simons Island, Jekyll Island, Sea Island, and Little Saint Simons Island, Georgia**

-52-

Glynn County, Georgia consists of a mainland and four barrier islands, Sea Island, Saint

Simons Island, Little Saint Simons Island, and Jekyll Island.

-53-

Separate causeways connect  Saint Simons Island and Jekyll Island to Brunswick.

-54-

A bridge connects  Saint Simons Island to Sea Island, a private resort populated by the ultra

wealthy.

-55-

A ferry ride connects Little Saint Simons Island to Saint Simons Island.

-56-

The 2023 U.S. Census estimate showed a Brunswick population of 15,404 with a Black

population of 61.6%; a White population of 30.8%; Hispanic population of 7.9%; Multiracial person

population of 4.5%; and less than 1% of persons of Asian, Native American, Native Alaskan, and Hawaiian or Pacific Islander origin.

 https://www.census.gov/quickfacts/fact/table/brunswickcitygeorgia/LND110210

**-57-**

The 2020 U.S. Census for Saint Simons Island showed a population of 14,982; a Black population of 1.7%; a White population of 93.4%; Hispanic population of 2.9%; Multiracial person population of 3.0%; and less than 1% of persons of Asian, Native American, Native Alaskan, and Hawaiian or Pacific Islander origin.

 https://www.census.gov/quickfacts/fact/table/stsimonscdpgeorgia/PST045223

**-58-**

Sea Island does not have a census report of its own.

**-59-**

The census includes Sea Island with Saint Simons Island.

**-60-**

Depending on what source one uses, Sea Island is a private, gated island, accessible only to resort guests and property owners with a population of approximately 343.

https://www.google.com/search?q=sea+island+georgia+2020+census+data&rlz=1C1CHBF_enU S1149US1152&oq=sea+island+georgia+2020+census&gs_lcrp=EgZjaHJvbWUqBwgBECEYo AEyBggAEEUYOTIHCAEQIRigATIHCAIQIRigATIHCAMQIRigATIHCAQQIRigATIHCAU QIRigATIHCAYQIRirAtIBCjI0Mzg5ajBqMTWoAgiwAgE&sourceid=chrome&ie=UTF-8

-61-

Jekyll Island had an estimated population of 1,078 in 2023, with a White population of 90.6%; a Hispanic population of 7.5%; and Native American population of 1.9%; and no measurable Black population.

https://data.census.gov/profile/Jekyll_Island_CCD,_Glynn_County,_Georgia?g=060XX00US131 2791599 lestsimonsisland0information for Brunswick, Glynn County, and the barrier islands:

Brunswick- Median income $31,021 with a 29.2% poverty rate;

Glynn County - $68,546 with a 15.7% poverty rate;

Saint Simons Island - - $105,944 with a 4.3% poverty rate;

Jekyll Island - $76,445 with a 0.0% poverty rate;

Sea Island - No reliable median income information with median home listing price of $5.499 million with recent sales prices ranging  to $27.5 million

https://www.census.gov/quickfacts/fact/table/brunswickcitygeorgia/LND110210;

https://www.census.gov/quickfacts/fact/table/stsimonscdpgeorgia/PST045224;

https://www.census.gov/quickfacts/fact/table/glynncountygeorgia/PST045224

**c.  Discipline History at Glynn Middle School and Glynn Academy: 2014 - 2024**

-62-

Children from the overwhelmingly White barrier islands attend GMS and GA, located in the predominately Black City of Brunswick.

-63-

The poorest children in the City of Brunswick attend school with the richest children in Glynn County.

**-64-**

Pervasive disciplinary disparities exist at both GMS and GA.

**-65-**

Black students at GMS faced disciplinary actions at a rate more than twice their White counterparts.

**-66-**

From 2014 to 2024, Black GMS students comprised 79.7, 75.6, 77.3, 77.9, 74.1, 79.1, 68.4, 64.2, 70.6, 71.1, and 60.4% respectively, of disciplinary actions at GMS. https://public.gosa.ga.gov/noauth/extensions/DisciplineDashV1/DisciplineDashV1.html.

**-67-**

During this same period, Black GMS students made up 31.6, 31.5, 32.7, 31.3, 32.3, 31.4, 30.0, 30.8, 24.4, and 27.2%, respectively, of the GMS population. https://public.gosa.ga.gov/noauth/extensions/DisciplineDashV1/DisciplineDashV1.html

**-68-**

Thus, Black GMS students faced disciplinary consequences 2.2 to 2.9 times more than White students.

**-69-**

During this same period, Black GMS students made up more than half of the suspensions from buses, in-school suspensions, alternative schools, out-of-school suspensions, physical restraints, juvenile court referrals, detentions, and other unnamed categories. https://public.gosa.ga.gov/noauth/extensions/DisciplineDashV1/DisciplineDashV1.html.

-70-

Black GMS students alone occupied the following disciplinary categories in the respective years: 2014 - physical restraint and detention; 2015 - alternative school, physical restraint, expulsion; 2016 - alternative school and physical restraints; 2019 - alternative school and juvenile court referral; 2020 - alternative school and juvenile court referral; 2021 - juvenile court referral and expulsion; and 2024 - physical restraints.

-71-

From 2014 to 2024, Black GA students comprised 58.5, 57.5, 59.6, 60.7, 67.5, 65.6, 63.0, 55.6, 58.8, 50.8, and 56.1% of disciplinary punishments at GA. https://public.gosa.ga.gov/noauth/extensions/DisciplineDashV1/DisciplineDashV1.html.

-72-

During this same period, Black GA students made up 27.2, 26.3, 27.6, 28.5, 28.3, 32.3, 26.3, 24.4, 23.8, 22.2, and 21.9%, respectively, of the GMS population. https://public.gosa.ga.gov/noauth/extensions/DisciplineDashV1/DisciplineDashV1.html

-73-

Thus, Black GA students faced disciplinary consequences 2.0 to 2.5 times more than White students. https://public.gosa.ga.gov/noauth/extensions/DisciplineDashV1/DisciplineDashV1.html

-74-

Black GA students alone occupied the following disciplinary categories in the respective years: 2014 - physical restraints and expulsions; 2017 - expulsion; 2019 - expulsion; 2020 - suspension from bus; 2021 - physical restraints; 2023 - expulsion; and 2024 - expulsion.

**V.**

**DEFENDANT GCSD'S DELIBERATE INDIFFERENCE TOWARD
PERVASIVE RACIAL DISCRIMINATION IN GLYNN COUNTY SCHOOLS**

**a. KA.T.'S Background**

**-75-**

**KA.T.** began his public school education in Brunswick's Head Start Program.

**-76-**

He then attended  Burroughs Mollette Elementary School from grades one through two.

**-77-**

**K.A.T.** spent the next three years at Goodyear, Altama, and finally at Burroughs Mollette

Elementary Schools

**-78-**

**K.A.T.** embarked on his time at GMS in 2022.

**-79-**

At the time of the incidents in this case, **K.A.T.** attended the sixth grade at GMS.

**-80-**

Now thirteen-years-old, **K.A.T.**, now approximately six-foot-four, attends the eighth grade

at Brunswick Christian Academy, a local, private, Christian school.

**-81-**

**KA.T.** also played several sports on recreational sports teams.

      **b.**     **Defendant GCSD's Persistent Failure to Appropriately Respond to Pervasive Usage of Slurs and Anti-Black Language by GSM Students Led to this Incident Described Below.**

**-82-**

On May 5, 2023, as a reward for Student-of-the-Month, **KA.T.** won the privilege of eating lunch in the GMS courtyard, separate from the cafeteria.

**-83-**

**K.A.T.** invited O.M., another Black male student and other Black male students, as guests at his lunch honor.

**-84-**

F.G., also a Student-of-the-Month recipient, and other White student invitees, sat at another table in the courtyard.

**-85-**

**K.A.T.** and F.G. were neither friends nor acquaintances and had no relationship whatsoever.

**-86-**

A disagreement between the two tables of students arose around thrown food.

**-87-**

F.G. and his friends picked at and made fun of one of **K.A.T.'S** guests.

**-88-**

Students at F.G.'S table began making fun of one of the Black males at **K.A.T.'S** table.

**-89-**

Not satisfied with the verbal humiliation of **K.A.T.'S** guest, F.G. as his friends began throwing food at **K.A.T.** and his guests.

-90-

**K.A.T.** and his guests responded with return food fire.

-91-

A school resource officer saw this and ordered both tables inside to the cafeteria.

-92-

Once inside and seated at a table, F. G. called both O. M. and **K.A.T.** "bitch, ass, nigger."

-93-

Two other Black female students, **A.B.** and **L.H.** heard this.

-94-

As the students at the table left the cafeteria to return to class, O.M., struck F. G.

-95-

**K.A.T.** continued to walk to class.

-96-

F. G. first ran in the opposite direction from **K.A.T.** then reversed course and ran directly at

**K.A.T.**

-97-

F.G.'S actions constituted simple assault under O.C.G.A. § 16-5-20.

-98-

Under this statute, one commits simple assault when one, "attempts to commit a violent

injury to the person of another; or commits an act which places another in reasonable apprehension

of immediately receiving a violent injury." O.C.G.A. § 16-5-20.

**-99-**

**K.A.T.** feared that F. G. planned to inflict racial violence on **K.A.T.**

**-100-**

**K.A.T.** feared that F.G.'S next step included a racially violent attack against **K.A.T.** based on F.G. having just called **K.A.T.** a "bitch, ass,  nigger," a prelude to racial violence.

**-101-**

The lynching of Ahmaud Arbery in Glynn County had made **K.A.T.** aware of the likelihood of racial violence by White males against Black males when White males assailed Black males with racist barrages.

**-102-**

**K.A.T.** knew that F.G.'S aggressive behavior preceded F.G.'S violent, racist attack on **K.A.T.** solely because of the color of **K.A.T.'S** skin.

**-103-**

**K.A.T.** believed that anytime a White person called a Black person the N-word and then aggressively charged toward this Black person, the White person intended to commit racially motivated violence against the Black person.

**-104-**

Therefore, when F.G.  reached **K.A.T.**, **K.A.T.** defended himself against the imminent racial attack by F.G. by throwing down and striking F.G. to stop F.G. from completing the racial onslaught against **K.A.T.**

**-105-**

Georgia law states that "[a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force. . .." O.C.G.A. § 16-3-21 (a).

**-106-**

Georgia law declares that **K.A.T.** had "no duty to retreat and has the right to stand his or her ground and use force as provided in [ O.C.G.A. § 16-3-21 (a)]. . . ." O.C.G.A. § 16-3-23.1.

**-107-**

A video at both ends of the hall captured the impending savagery.

**-108-**

F.G. ran at **K.A.T.** in what **K.A.T.** reasonably concluded embodied F.G.'S "attempt to commit a violent injury to **K.A.T.**" after calling **K.A.T.** that unspeakable racial slur.

**-109-**

Further, F.G.'s rush at **K.A.T.** "place[d] [**K.A.T.**] in reasonable apprehension of immediately receiving a violent injury" after F.G. called **K.A.T.** hurled that racial invective.

**-110-**

**K.A.T.** had witnessed F.G.'S prior use of racial insults against O.M.

**-111-**

F.G. had called O.M. "monkey" several times in **K.A.T.'S** presence.

**-112-**

This experience with F.G. made F.G.'S evil intentions clear to **K.A.T.**

-113-

After the incident, school officials escorted **K.A.T.** and O.M. to the school office.

-114-

The GMS administration immediately called F.G.'s care giver.

-115-

The GMS administration immediately interrogated **K.A.T.** and O.M.

-116-

The GMS administration had no interest in hearing from **K.A.T.** and O.M.

-117-

The GMS administration contacted **MS. BAKER AFTER** they interrogated **K.A.T.**

-118-

GMS suspended **K.A.T.** for ten days.

-119-

**MS. BAKER** demanded a tribunal hearing pursuant to O.C.G.A. § 20-2-753.

-120-

**K.A.T.** has a constitutional right to a public education under Ga. Const. Art. VIII § I, ¶, I, *McDaniel v. Thomas*, **248 Ga. 632 (1981)**; *D.B. v Clarke County Board of Education*, **220 Ga.App 330 (1996)**.

-121-

On approximately May 11, 2023, **DEFENDANT SENETRA HAYWOOD** refused to allow **MS. BAKER MS. BAKER** to review all videos of the incident **DEFENDANT GCSD** planned to use against **K.A.T.**

**-122-**

**DEFENDANT HAYWOOD** called it a "courtesy" to allow Ms. Baker to see any of the videos.

**-123-**

**DEFENDANT HAYWOOD** also refused a subpoena to Dr. Harris for A.B., a critical witness in **K.A.T.'S** defense.

**-124-**

On May 15, 2023, **DEFENDANT MCKENZIE** convened a tribunal against **K.A.T.** on a battery charge.

**-125-**

**DEFENDANT CURTIS CREWS**, a Black male, Assistant Principal at Glynn Academy High School; **DEFENDANT MAGGIE GRANGE**, on information and belief, a Black Female, Principal of Risley Middle School; and **DEFENDANT BETHANY CRUTCHFIELD**, a Black Female,  Assistant Principal of Needwood Middle School, comprised the tribunal.

**-126-**

**DEFENDANT COLLIER** presented the case for the Glynn County Schools.

**-127-**

Dr. Dira Harris, **K.A.T.'S** aunt, and **MS. BAKER'S** daughter, appeared for **K.A.T.**

**-128-**

**DEFENDANT COLLIER**, uninterested in uncovering the truth, failed to call F. G.

-129-

**DEFENDANTS HAYWOOD**, **MCKENZIE**, and **COLLIER** allowed Dr. Harris and **MS. BAKER** to finally see **ALL** the videos **AT** the tribunal.

-130-

At the hearing, **DEFENDANT COLLIER** chastised Dr. Harris for failing to secure her witnesses despite **DEFENDANT HAYWOOD'S** withholding of the subpoena.

-131-

**DEFENDANT COLLIER** incorrectly testified that F. G. called **K.A.T.**, a "bitch."

-132-

**K.A.T.** corrected **DEFENDANT COLLIER** during **K.A.T.'S** testimony.

-133-

**DEFENDANT CRUTCHFIELD** admitted that she knew what BAN meant.

-134-

**K.A.T.** also corrected **DEFENDANT CREWS** who asserted that F. G. used the word "bitch."

-135-

**K.A.T.** testified that he felt the threat of immediate physical violence from F. G. after F.G. called **K.A.T.** a "bitch, ass, nigger" and then forcefully accosted **K.A.T.**

-136-

**DEFENDANT MCKENZIE** abdicated his role as an allegedly objective hearing officer and advocated for F.G.

-137-

**DEFENDANT MCKENZIE** injected himself into the testimony and tried to bully **K.A.T.** into admitting that **K.A.T.** tried to keep F. G. from running away, despite a total absence of any evidence of this.

-138-

**K.A.T.** responded "No sir, I was still defending myself."

-139-

In a demonstration of the total disregard for the imminent racial violence that confronted **K.A.T.**, **DEFENDANT CRUTCHFIELD** incredulously asked **K.A.T.** if **K.A.T.** and F.G. were "friends" after F. G., had just called **K.A.T.** the most offensive name in America.

-140-

In a further exhibition of **DEFENDANT CRUTCHFIELD'S** willful disregard and tone deafness of the indignity F.G. foisted upon **K.A.T.**, **DEFENDANT CRUTCHFIELD** asked if **K.A.T.** felt comfortable enough to sit by F.G. **K.A.T.**

-141-

Unsurprisingly, **K.A.T.** answered "No" to both questions.

-142-

Notwithstanding a complete lack of any evidence of **K.A.T.** battering F.G., **DEFENDANTS CREWS**, **GRANGE**, and **CRUTCHFIELD** ruled that

> We find [**K.A.T.**]guilty of the charges of Battery-Level 3 . . . And then the recommendation of the school is that [**K.A.T.**]will be expelled from the Glynn County School System for the remainder of the 2022-2023 school year and the full school year of 2023-2024, for the option to enroll at GLC. With no reset-with no option of reset.

**-143-**

The Board accepted the tribunal recommendation with the addition of the Reset program.

**-144-**

**MS. BAKER** retained counsel to appeal the tribunal finding.

**-145-**

The Georgia State Board of Education reversed and remanded the tribunal decision, ruling

> The State Board finds that the District's failure to issue subpoenas
> violated Georgia law and State Board regulations. The Student was
> deprived of the opportunity to present witness testimony, which
> hindered his efforts to mount an adequate defense. The State Board
> further finds that the disciplinary process was fundamentally unfair
> and that the Student's due process rights were violated.

**-146-**

The State Board's rebuke of **DEFENDANT GCSD'S** "fundamentally unfair" "disciplinary

process" condemned the procedurally irregular process that violated **K.A.T.'S** "due process rights."

**-147-**

Although the State Board did not address the racial motive of the deprivation of **K.A.T.'S**

rights, the State Board's decision laid bare the depth that **DEFENDANT GCSD** sunk to affirm

F.G.'S racist conduct.

**-148-**

On January 19, 2024, **DEFENDANT MCKENZIE** convened a second tribunal against the

then twelve-year-old **K.A.T.**

**-149-**

**DEFENDANT MCKENZIE** rejected counsel's objection to **DEFENDANT MCKENZIE** conducting the hearing due to **DEFENDANT MCKENZIE'S** demonstrated bias from the prior hearing, another confirmation of GMS' pattern and practice of racial discrimination against Black students at GMS.

**-150-**

This tribunal panel consisted of **DEFENDANTS LANHAM**, **BROOKS**, and **REYNA**.

**-151-**

**DEFENDANT AKINS**  presented the case for the school system.

**-152-**

**DEFENDANT AKINS** called **DEFENDANT COLLIER** who played two of the four videos of the incidents.

**-153-**

This time, **DEFENDANT AKINS** called F.G.  who denied calling **K.A.T.** and O.G. a BAN.

**-154-**

When under cross examination by **K.A.T.'S** counsel, F.G. began to cry when counsel exposed F.G.'S racist conduct toward **K.A.T.**

**-155-**

In a stunning move, **DEFENDANT BROOKS**, like **DEFENDANT MCKENZIE** in the prior hearing, abandoned **DEFENDANT BROOKS'** obligation to evenhanded justice, arose, plucked a tissue from a box, walked to F.G. and gave F.G. the tissue.

**-156-**

**DEFENDANT BROOKS** fail to extend any such showing of compassion, care, or concern for **K.A.T.** when **DEFENDANT BROOKS** heard the testimony from eyewitnesses A.B. and L.H., who testified to F.G. hurling the most vile of all racial epithets at **K.A.T.**

**-157-**

**DEFENDANT BROOKS'** partisan act validated **DEFENDANT BROOKS'** support of GMS' pattern and practice of racial discrimination against Black, especially Black male students at GMS.

**-158-**

**DEFENDANT BROOKS'** failure to extend the same sort of kindness to **K.A.T.** that **DEFENDANT BROOKS** did to F.G. reinforces the paternalistic stance of protecting White boys from consequences from their racist proclivities while punishing Black boys for daring to protect themselves from imminent racial violence from the same White boys' racist acts.

**-159-**

In **K.A.T.'S** case, counsel called **K.A.T.**, A.B.,and L.H., both GMS Black female students.

**-160-**

The three students testified that they heard F.G. called both **K.A.T.** and O.G. a "bitch ass nigger."

**-161-**

Despite **K.A.T.'S** uncontradicted showing that he defended himself against K.G.'S forthcoming racial assault, **DEFENDANTS LANHAM**, **BROOKS**, and **REYNA** willfully ignored **K.A.T.'S** uncontradicted proof of repelling F.G.'S violent racial pillage.

-162-

**DEFENDANTS LANHAM**, **BROOKS**, and **REYNA** suspended **K.A.T.** for the rest of the school year, that ended in May 2024.

-163-

GMS did nothing to K.G.

-164-

The GMS administration's action demonstrated that it did not care about protecting its Black students from racial attacks by its White students.

-165-

As further evidence of GMS' disregard for **K.A.T.**, GMS  prosecuted **K.A.T.**  in juvenile court for defending himself.

-166-

The Black, juvenile court prosecutor, relented somewhat in **K.A.T.'S** prosecution.

-167-

Rather then dismissing this unjust prosecution, as allowed under Georgia law by O.C.G.A. § 15-11-540, the State of Georgia consented to an informal adjustment  on February 7, 2024.

-168-

**K.A.T.**, contrary to the image proffered by **DEFENDANTS**, performed well, earning an early release from the informal adjustment.

-169-

Counsel appeared before an executive session of the Glynn County School Board on May 14, 2024.

**-170-**

Counsel informed the Board of the freedom felt by White students at GMS to call Black students the N-word.

**-171-**

**DEFENDANT SPENCE** wrote counsel a letter claiming that he would take action.

**-172-**

As a result of the racially hostile environment encouraged at GMS, GA, and other **DEFENDANT GCSD** schools, **MS. BAKER** enrolled **K.A.T.** at Brunswick Christian Academy where **K.A.T.** excels.

**-173-**

**K.A.T.'S** treatment at the hands of the GMS and **DEFENDANT GCSD** reflects the truths found in studies that have identified that many in society routinely dehumanize Black boys and erroneously identify them as older, less innocent, and more threatening than White boys. www.apa.org/pubs/journals/releases/psp-a0035663.pdf

**-174-**

At GMS **K.A.T.** was a good student who had won a good conduct award on the date of the incident at GMS.

**-175-**

**KA.T.** felt unsafe and unprotected at GMS due to the school administration's tolerance of racial degradation of Black students by White students.

**-176-**

**KA.T.** knew that the school administration would do nothing about the racial discord he experienced based on GMS unresponsiveness to previous bullying suffered by **KA.T.**

**-177-**

Even when **KA.T.'S** second tribunal resulted in a suspension until the next semester as opposed to the expulsion imposed by his first tribunal, **KA.T.** knew that if he returned to Glynn County schools, he would face constant racial antagonism and plots to have him removed from school.

**-178-**

Therefore, **MS. BAKER** transferred **KA.T.** to BCA where **KA.T.** continues to bloom.

**-179-**

Public school offers a talented athlete like **K.A.T.** an exceptional opportunity to hone his physical skills.

**-180-**

After the trauma **K.A.T.** faced at GMS, he feared a return to Glynn County's public schools.

**-181-**

K.A.T. fears a recurrence of the racial abuse he suffered at GMS.

**-182-**

**K.A.T.'S** GMS experience taught him that White people can attack him and call him the most vile, disgusting names with impunity.

**-183-**

**K.A.T.** experienced bullying due to his race and height.

**-184-**

GMS' treatment of **K.A.T.** taught **K.A.T.** that GMS protects White boys but not Black boys.

**-185-**

**K.A.T.** learned that Black boys have no right to defend themselves from racial aggression.

**-186-**

He also learned that the lesson from the studies that revealed that many in White society hold the unsubstantiated fear of Black boys and generalization of the lack of innocence of Black boys.

**-187-**

**K.A.T.** learned that Black students' lives and existence at GMS did not matter.

**-188-**

**K.A.T.'S** tenure at GMS made clear to **K.A.T.** that at GMS, he did not have any value as a human being.

**-189-**

**KA.T.** has all A's and B's at BCA, a feat he never accomplished at the racially stifling GMS.

## VI.  STATUTORY TOLLING OF THE STATUTE OF LIMITATIONS

**-190-**

Neither Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), nor 42 U.S.C. § 1983 contain a statute of limitations.

**-191-**

Courts apply the statute of limitations for personal injury actions in the state where the incident occurred. ***Wallace v. Kato,* 549 U.S. 384, 386 (2007)**.

-192-

The statute of limitations for Title VI and § 1983 claims in Georgia is two years. *See* O.C.G.A. § 9-3-33; ***Lovett v. Ray,*** **327 F.3d 1181, 1182 (11th Cir. 2003)**.

-193-

However, "[m]inors . . . who are such when the cause of action accrues," are considered "disabled" under O.C.G.A. § 9-3-90(a) and thus are "entitled to the same time after their disability is removed to bring an action as is prescribed for other persons." O.C.G.A. § 9-3-90(a).

-194-

"Application of a state's minority tolling provision [for a § 1983 claim] appears to be a widely accepted practice." *Draper v. Atlanta Pub. Sch. Dist.,* No. l:07-CV-0224-MHS, 2008 WL 11381574, at * 15 (N.D. Ga. Mar. 31, 2008).

-195-

"Georgia's minority tolling provision is not contrary to the underlying policies of . . . Section 1983 [ or Title VI of the Civil Rights Act of 1964]." *Id.*

-196-

Thus, the two-year statute of limitations for Title VI claims and their 42 U.S.C. § 1983 claims begins to run for **K.A.T.** when he turns eighteen and does not expire until two years after that **K.A.T.'S** eighteenth birthday.

-197-

**K.A.T.'S** causes of action accrued while he was a minor.

**-198-**

Because **K.A.T.** has not reached majority or within two years of his eighteenth birthday, the statute of limitations does not bar bringing these claims.

### VII.  REQUESTS FOR RELIEF

### COUNT ONE

**DEFENDANT GCSD**
**RACIAL DISCRIMINATION**
**TITLE VI OF THE CIVIL RIGHTS ACT**
**42 U.S.C. § 2000D**

**-199-**

**DEFENDANT GCSD** receives federal funding and is thus subject to Title VI of the Civil Rights Act, 42 U.S.C. § 2000d.

**-200-**

All **DEFENDANTS**, along with other named and unnamed school officials, knew of the incidents of racial discrimination within **DEFENDANT GCSD**.

**-201-**

While attending **DEFENDANT GCSD** schools, **K.A.T.** and others suffered severe, pervasive, and offensive discrimination and/or harassment at the hands of White students and administrators.

**-202-**

Despite their actual knowledge, **DEFENDANTS** failed to address and remedy the incidents and the detrimental impact they had on **K.A.T.** and other students.

**-203-**

The trauma **K.A.T.** suffered occurred due to **DEFENDANTS'** pattern and practices of racial discrimination, policies, customs, or usage.

**-204-**

**DEFENDANTS** acted with deliberate indifference to the impact these incidents had on **K.A.T.** and other students by failing to meaningfully address these incidents or effectively stop them from recurring.

**-205-**

**DEFENDANTS'** acts and omissions effectively barred **K.A.T.** and other students from accessing the same educational opportunities and benefits as their White classmates, including but not limited to a safe and supportive school environment and equal access to participate in certain athletic and extracurricular activities.

**-206-**

As such, **DEFENDANTS'** acts violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

**COUNT TWO**

**ALL DEFENDANTS**
**EQUAL PROTECTION**
**FOURTEENTH AMENDMENT**
**U.S. CONSTITUTION**
**42 U.S.C. § 1983**

**-207-**

**DEFENDANTS** knew or were made aware of, either through actual or constructive notice of the repeated and serious incidents of racial discrimination at GMS, GA, and the remaining Glynn

County Schools and the harm inflicted on **K.A.T.** and other Black students at GMS, GA, and the remaining Glynn County Schools.

**-208-**

Despite this notice, **DEFENDANTS** remained deliberately indifferent to repeated incidents of racial discrimination by ignoring these incidents and refusing to take corrective action.

**-209-**

**K.A.T.** and other Black students suffered harms because of **DEFENDANTS'** a pattern and practice of racial discrimination in policies, customs, or usage.

**-210-**

**DEFENDANTS'** conduct thus violated **K.A.T.** and other Black students' rights to equal protection under the Fourteenth Amendment of the U.S. Constitution's Equal Protection Clause.

**-211-**

**DEFENDANTS** have a legal obligation NOT to racially discriminate against students.

**-212-**

"The Ku Klux Klan Act of 1871," and officially known as an "Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes," known today as 42 U.S.C. § 1983 and the Civil Rights Act of 1871, constituted the Third Enforcement Act to protect the newly emancipated Black enslaved person from the racial violence and intimidation they faced from those who sought to abrogate these rights.

**-213-**

**DEFENDANTS'** conduct violated these laws.

## COUNT THREE

### ALL DEFENDANTS
### THIRTEENTH AMENDMENT
### U.S. CONSTITUTION
### 42 U.S.C. § 1983
### BADGES AND INCIDENTS OF SLAVERY

**-214-**

The Thirteen Amendment to the United States Constitution outlawed involuntary servitude except for conviction of a crime.

**-215-**

All **DEFENDANTS'** conduct in his lawsuit invokes the badges and incidents of slavery that continues to plague Black persons in this country, this state, and this county.

**-216-**

The Supreme Court has given Congress the tools to " abolish all badges and incidents of slavery in the United States." ***Jones* v. *Alfred H. Mayer Co.,* 392 U.S. 409, 439 (1968)**.

**-217-**

**DEFENDANTS'** conduct violated the Thirteenth Amendment by imposing on **K.A.T.** the badges and incidents of slavery.

**-218-**

The United States Supreme Court admitted that this nation cannot escape racial disparities in sentencing.

-219-

In ***McCleskey v. Kemp*, 481 U.S. 279, 312 (1987)**, the United States Supreme Court acknowledged that "Apparent disparities in sentencing are an inevitable part of our criminal justice system."

-220-

The same can be said about the apparent racial disparities in discipline at GMS, GA, and the Glynn County Schools, another badge and incident of slavery.

## COUNT FOUR

### ALL DEFENDANTS
### U.S. CONSTITUTION
### 42 U.S.C. § 1985

-221-

**DEFENDANT**S **SPENCE** and **GCSD** conspired for the purpose of depriving, either directly or indirectly, **K.A.T.** and other Black students of the equal protection of the laws, or of equal privileges and immunities under the laws by approving the racial discrimination by the tribunals and GMS and by GA and other schools against other Black students.

-222-

**DEFENDANTS AKINS** and **COLLIER** conspired against **K.A.T.** and other Black students for the purpose of depriving **K.A.T.** and other Black students, either directly or indirectly, of the equal protection of the laws, or of depriving **K.A.T.** and other Black students, either directly or indirectly, of the equal privileges and immunities under the laws by suspending **K.A.T.**, referring **K.A.T.** for juvenile court prosecution, taking no action against F.G. for using the racially hateful language against **K.A.T.** and other Black students, by permitting the racially hostile environment to

exist at GMS, by viewing **K.A.T.** and other Black male students as inherently dangerous in actions taken against Black male students as opposed to actions taken against White male students, resolve incidents more harshly  against Black male students than White male students based their racial differences and physical size, and by allowing racial discrimination to flourish against **K.A.T.** and other Black students at GMS.

**-223-**

**DEFENDANTS HAYWOOD** and **MCKENZIE** conspired against **K.A.T.** and other Black students for the purpose of depriving **K.A.T.** and other Black students, either directly or indirectly, of the equal protection of the laws, or of depriving **K.A.T.** and other Black students, either directly or indirectly, of the equal privileges and immunities under the laws by

**-224-**

**DEFENDANTS  MCKENZIE**, **CREWS**, **GRANGE**,  **CRUTCHFIELD**, **LANHAM**, **BROOKS**, **REYNA**  conspired against  **K.A.T.** for the purpose of depriving **K.A.T.** either directly or indirectly, of the equal protection of the laws, or of depriving **K.A.T.** either directly or indirectly, of the equal privileges and immunities under the laws by finding **K.A.T.** guilty of Glynn County School rules at **K.A.T.'S** based on racially biased factors that included the race of **K.A.T.** and F.G. and extending protection to F.G. based on his race and withholding protection from **K.A.T.** based on his race, viewing **K.A.T.** as less innocent than White boys due to his race and stature, viewing **K.A.T.** as inherently dangerous based on his race, viewing **K.A.T.** as more worthy of punishment due to his race and stature, and for other reasons.

## VIII.  PRAYER FOR RELIEF

**WHEREFORE**, **K.A.T.** and **MARY E. BAKER**, Plaintiffs in the above-styled case pray that this Court enter the following relief:

a)      Find and declare that **DEFENDANTS'** conduct, as described herein and taken against **K.A.T.** and **MARY E. BAKER** constitute race discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.;*

b)      Find and declare that **DEFENDANTS'** conduct as described herein and taken against **K.A.T.** and **MARY E. BAKER** violated **K.A.T.** and **MARY E. BAKER'S** rights to Equal Protection under the Fourteenth Amendment;

c)      Find and declare that **DEFENDANTS'** conduct, as described herein and taken against **K.A.T.** and **MARY E. BAKER** violated **K.A.T.** and **MARY E. BAKER'S** rights to Equal Protection under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983;

d)      Find and declare that **DEFENDANTS'** conduct, as described herein and taken against **K.A.T.** and **MARY E. BAKER** violated **K.A.T.** and **MARY E. BAKER'S** rights to Equal Protection under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1985;

e)       Find and declare that **DEFENDANTS'** conduct, as described herein and taken **K.A.T.** and **MARY E. BAKER**, violated **K.A.T.** and **MARY E. BAKER'S** rights protected under the Thirteenth Amendment to the U.S. Constitution as a badge and incident of slavery;

e)      Issue a permanent injunction requiring **DEFENDANTS** to meaningfully respond to the racist acts and environment within GCSD;

f)      Award damages as deemed appropriate, in an amount to be determined at trial;

g)      Award punitive damages as deemed appropriate, in an amount to be determined at trial;

h)      Award all costs and attorneys' fees incurred in prosecuting this action;

i)      Grant any further and such other relief to which **K.A.T.** and **MARY E. BAKER** may be

entitled as this Court deems appropriate.

**K.A.T.** and **MARY E. BAKER** request a trial by jury on all claims.

Respectfully submitted this 3rd day of May 2025.


/s/ *James A. Yancey, Jr.*                    /s/ *Douglas W. Alexander*

JAMES A. YANCEY, JR.                    DOUGLAS W. ALEXANDER
Attorney for K.A.T. and Mary E. Baker    Attorney for K.A.T. and Mary E. Baker
State Bar of Georgia No. 779725          State Bar of Georgia No. 008859
James A. Yancey, Jr., Attorney at Law P.C.  Douglas W. Alexander
704 G Street                             Lt Colonel, USAF (Retired)
Brunswick, Georgia 31520-6749            Attorney at Law
Office: (912) 265-8562                   109 Shore Rush Drive
Fax: (912) 265-8564                      Saint Simons Island, Georgia  31522-1422
Email: jayjr@standinginthergap.biz       Phone: (912) 270-2258
                                         Email: dugalex@comcast.net

C:WPDOCS/SCHOOL/M-Z/2024/THOMAS-K.SCH/M-Z/PLEADINGS/THOMAS
COMPLAINT FOR DAMAGES

This ___3rd___ day of May 2025.

_____
MARY E. BAKER

Sworn to and subscribed before me
This 3rd day of May 2025.

_____
NOTARY PUBLIC

My Commission Expires: 06/21/2027

